No. 23-15611

# United States Court of Appeals

For the

# Ninth Circuit

In re: ROUNDUP PRODUCTS LIABILITY LITIGATION,

Scott Gilmore, et al, Plaintiff/Appellees,

v.

Ryan Tomlinson; Carol Richardson, Objectors/Appellants,

v.

Monsanto Company, Defendant/Appellee.

On Appeal from the
United States District Court for the Northern District of California
The Honorable Vince G. Chhabria, District Judge
No. 3:21-cv-08159-VC

**REPLY BRIEF**

Dated: December 27, 2023

| | |
|---|---|
| Don M. Downing | Patrick J. Stueve |
| Gretchen Garrison | Todd E. Hilton |
| **GRAY, RITTER & GRAHAM, P.C.** | Kasey A. Youngentob |
| 701 Market Street, Suite 800 | **STUEVE SIEGEL HANSON LLP** |
| St. Louis, Missouri 63101 | 460 Nichols Road, Suite 200 |
| Tel: 314-241-5620 | Kansas City, Missouri 64112 |
| | Tel: 816-714-7100 |

*Attorneys for Objectors/Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................................................ii

INTRODUCTION......................................................................................1

A.    Settlors cannot show the district court ever evaluated any of the *Bluetooth* red flags. ................................................................1

B.    Monsanto's attempts to discount the signs of collusion defy precedent and common sense..........................................................2

C.    Missouri class members are in a stronger position than any other class member. ..............................................................10

D.    Gilmore and his counsel are inadequate representatives for the certified Missouri class.................................................................16

    1.    Gilmore and his counsel have fundamental conflicts of interest with the certified Missouri class. ................................................17

    2.    Gilmore and his counsel failed to vigorously prosecute this case. ..............................................................................19

    3.    Gilmore and his counsel's inadequacy created an inadequate settlement. ......................................................21

CONCLUSION .....................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Advanced Internal Techs., Inc. v. Google, Inc.*,
  2006 WL 889477 (N.D. Cal. Apr. 5, 2006) ..........................................15

*Allen v. Santa Clara County Correctional Peace Officers Ass'n*,
  38 F.4th 68 (9th Cir. 2022) .......................................................................3

*Americas Mining Corp v. Theriault*,
  51 A.3d 1213 (Del. 2012) .........................................................................3

*Annunziato v. eMachines Inc.*,
  2006 WL 5014567 (C.D. Cal. July 24, 2006) .......................................14

*Califano v. Yamaski*,
  422 U.S. 682 (1979) ................................................................................11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) ................................................................................10

*Hartford Acc. & Indem. Co. v. Beaver*,
  466 F.3d 1289 (11th Cir. 2006) .............................................................10

*In re Apple Inc. Device Performance Litig. (Apple Device II)*,
  2023 WL 2090981 (N.D. Cal. Feb. 17, 2023)....................................7, 8

*In re Apple Inc. Device Performance Litig. (Apple Device)*,
  2021 WL 1022867 (N.D. Cal. Mar. 17, 2021).......................................7

*In re Bluetooth Headset Products Liability Litigation*,
  654 F.3d 935 (9th Cir. 2011) ..............................................................2, 4

*In re Roundup Prod. Liab. Litig.*,
  --- F. Supp. 3d --- 2023 WL 2723340,
  (N.D. Cal. Mar. 31, 2023). ......................................................3, 4, 5, 20

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prod. Liab.
  Litig.*,
  895 F.3d 597 (9th Cir. 2018) ............................................................9, 10

*In re Wal-Mart, Inc. Wage & Hour Litig. (Walmart Wage)*,
   2011 WL 31266 (N.D. Cal. Jan. 5, 2011) .......................................... 7, 8

*Jaffe v. Morgan Stanley DW, Inc.*,
   2007 WL 163196 (N.D. Cal. Jan 19, 2007).......................................... 14

*Jones v. Monsanto Co.*,
   38 F.4th 693 (8th Cir. 2022)......................................................... 21, 22

*Kim v. Allison*,
   --- F.4th ---, 2023 WL 8405866 (9th Cir. Dec. 5, 2023) ............... *passim*

*Lambert v. Nutraceutical Corp.*,
   870 F.3d 1170 (9th Cir. 2017) ............................................................ 12

*Norton v. LVNV Funding, LLC*,
   2021 WL 3129568 (N.D. Cal. July 23, 2021) ........................................ 6

*Odon USA Meats, Inc. v. Ford Motor Credit Corp.*,
   1994 WL 529339 (N.D. Ill. Sept. 27, 1994) ........................................ 18

*Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*,
   487 F.3d 261 (5th Cir. 2007) ............................................................. 10

*Patel v. Axesstel, Inc.*,
   2015 WL 6458073 (S.D. Cal. Oct. 23, 2015)........................................ 19

*Pearson v. Philip Morris, Inc.*,
   358 Or. 88 (2015) .............................................................................. 18

*Plubell v. Merck & Co.*,
   *289* S.W.3d 707 (Mo. App. W.D. 2009).............................................. 15

*Schleicher v. Wendt*,
   618 F.3d 679 (7th Cir. 2010) ............................................................. 10

*Stromberg v. Ocwen Loan Servicing, LLC*,
   2019 WL 13202215 (N.D. Cal. May 23, 2019) ...................................... 4

*Taafua v. Quantum Global Technologies, LLC*,
   2021 WL 579862 (N.D. Cal. Feb. 16, 2021).......................................... 19

*Tersakovec v. Ford Motor Co.*,
   --- F.4th --- (11th Cir. 2023) .................................................................. 15

*Vigil v. Hyatt Corp.*,
   2023 WL 6629818 n.2 (N.D. Cal. Oct. 10, 2023) ..................................... 4

*Wal–Mart Stores, Inc. v. Visa U.S.A. Inc. (In re Visa*
   *Check/MasterMoney Antitrust Litig.)*,
   280 F.3d 124 (2d Cir. 2001) .................................................................. 10

*Yee v. City of Escondido*,
   503 U.S. 519 (1992) ............................................................................... 3

**Rules**

Fed. R. Civ. P. 23 ...................................................................... 12, 17, 18

**Other Authorities**

4 Newberg on Class Actions § 13:7 (5th ed.) ........................................... 6

iv

# Introduction

Settlors cannot defend the settlement as it is. So they pretend the settlement is something it isn't. First, settlors claim the district court thoughtfully considered each *Bluetooth* sign of collusion; it didn't. Second, settlors argue none of those *Bluetooth* signs are present; they are. Third, settlors contend class certification in Missouri did not increase the value of those class members' claims; it did. As a result, Gilmore and his counsel could not adequately represent the certified class of Missouri Roundup purchasers. And Monsanto paid $23 million to escape $866 million in liability (under Gilmore's calculation).[1]

## A. Settlors cannot show the district court ever evaluated any of the *Bluetooth* red flags.

Gilmore admits the district court must examine the *Bluetooth* signs of collusion. Gilmore Br. at 38[2]. But he argues it "thoroughly assess[ed] each *Bluetooth*" sign, *id*. at 39, addressing them "in at least three orders," *id*. *See also* Monsanto Br. at 38 (suggesting the district court "evaluated all three . . . 'indicia of collusion' repeatedly"). The district court's orders prove otherwise—only its Final Approval Order even mentions *Bluetooth*.

---

[1] As it so happens, this is less than even Monsanto's expert calculated (1.5% overcharge).

[2] File stamped page numbers provided.

And that order discusses none of the signs. To the contrary, the district court only states that "[u]sing the heightened scrutiny Objectors argue is required by *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011), the Court finds there is no evidence of inappropriate collusion or inadequate representation." 1-ER-8. Magic words—without the necessary critical analysis—will not do. *See Kim v. Allison*, --- F.4th ---, 2023 WL 8405866, at *4 (9th Cir. Dec. 5, 2023) (reversing the district court's settlement approval for inadequately evaluating an objector's adequacy arguments). The Court can reverse for this reason alone.

## B. Monsanto's attempts to discount the signs of collusion defy precedent and common sense.

This settlement shows all the signs of collusion including a disproportionate attorneys' fee request and a reversion tied to a clear sailing agreement. The district court's failure to appropriately explore those signs is thus magnified here. And because Monsanto cannot identify *a single settlement* approved with those terms, it turns to denial.[3]

---

[3] Other than also denying the presence of the *Bluetooth* signs, Gilmore largely leaves the defense of these factors to Monsanto. *See* Gilmore Br. at 40.

2

*See also* Gilmore Br. at 40 (denying presence of the red flags). Despite common sense and precedent to the contrary, it contends none of the problematic provisions really existed. Each is taken in turn.

First, Monsanto claims the district court "correctly held that Class Counsel's fee request for the benchmark 25% did not prove any collusion."[4] Monsanto Br. at 38. That is misdirection. The district court held that "[b]y pegging the benchmark to the $45 million ceiling amount, class counsel ha[d] artificially inflated the presumptively reasonable level of fees."[5] *In re Roundup Prod. Liab. Litig. (Fee Approval)*, --- F.

---

[4] Monsanto asserts that Tomlinson plaintiffs have waived the argument "that the fee is disproportionate under Delaware law." No waiver has occurred. As Gilmore concedes, the Tomlinson plaintiffs already made the argument that the fee is disproportionate. *See* Gilmore Br. at 16. Precise repetition is not required. *See Allen v. Santa Clara County Correctional Peace Officers Ass'n*, 38 F.4th 68, 71 (9th Cir. 2022) ("Appellants can make any argument in support of the claim on appeal— they are 'not limited to the precise arguments they made below.'" (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)). And the district court decided "'no meaningful litigation efforts'" occurred. Monsanto Br. at 41 (quoting *Americas Mining Corp v. Theriault*, 51 A.3d 1213, 1260 (Del. 2012)). Thus, Gilmore counsel's fee request was disproportionate under any applicable legal standard.

[5] Monsanto argues the relevant fund size from which to set the benchmark was in flux. The district court disagreed. Under clear Ninth Circuit precedent, the appropriate mark was the actual class recovery. *Fee Approval*, 2023 WL 2723340, at *2. In any event, Monsanto does not explain how a feature benefiting Monsanto should increase Gilmore counsel's fees (especially one tethered to the "moon"). 2-ER-50.

Supp. 3d --- 2023 WL 2723340, at *2 (N.D. Cal. Mar. 31, 2023). And "the only way the settlement amount could exceed $23 million is to award fees to class counsel that would *vastly exceed* 25% of what Monsanto pays in total." *Id.* (emphasis added). As a result, the district court cut Gilmore counsel's fee in half. *Id.* at *2-3. The district court therefore explicitly decided Gilmore counsel's fee request was disproportionate to the class recovery.

Nor is the unreasonable request cleansed by a severability clause. *In re Bluetooth*, 654 F.3d 935, 948 (9th Cir. 2011); *see also Stromberg v. Ocwen Loan Servicing, LLC*, 2019 WL 13202215 (N.D. Cal. May 23, 2019) (rejecting severability as a defense to a disproportionate fee request). Sometimes the harm is in the asking. That is true where, as here, Gilmore counsel sought almost half the class's total relief. Opening Br. at 21 n.1.

Second, Monsanto claims the settlement lacks the "problematic" type of clear sailing agreement because fees were paid from a common fund. Monsanto Br. at 41; *but see Vigil v. Hyatt Corp.*, 2023 WL 6629818, at *5 n.2 (N.D. Cal. Oct. 10, 2023) (concluding a clear sailing "arrangement may exist regardless of how attorneys' fees are being

paid."). But this settlement did not have a fully non-reversionary common fund. It instead had a non-reversionary floor and an illusory ceiling. Monsanto agreed not to oppose a fee tied to the ceiling despite a nearly certain expectation that some cut in fees would return to it.

Still, Monsanto argues the fee arrangement encouraged Gilmore counsel to maximize the class's ultimate recovery. Monsanto Br. at 41. Not so. Because Gilmore counsel was always going to seek 25% of the *ceiling* amount, their fee was not tied to the class's *actual* recovery. Unlike a pure claims-made settlement, Gilmore counsel had no stake in maximizing the class's recovery.

Monsanto also argues it "did not 'back' Class Counsel's fee request for 25% of the ceiling amount." Monsanto Br. at 41. Yet its arrangement exceeded the usual promise not to oppose fees. It agreed to artificially inflate Gilmore counsel's lodestar by stipulating "that litigation pursued in the [other cases] contributed significantly to bringing about the mediation in this matter and . . . is appropriately considered by the Court in assessing the reasonableness of [Gilmore] [c]ounsel's Fees and Expenses." 2-ER-230. The district court decided, however, that those other cases did nothing to "meaningfully advance the ball." *Fee Approval*,

2023 WL 2723340, at *3 (cleaned up). Simply put, Monsanto misleadingly propped up Gilmore counsel's fee request despite a financial incentive to the contrary.

And because the new settlement terms represent a sharp departure from the old settlement terms, Monsanto must misrepresent the old terms. For example, Monsanto claims that it "agreed in *Rawa* not to oppose 'an award of no more than the 'standard' 25% of the class fund'; it only objected when class counsel sought fees amounting to 33% of the common fund." Monsanto Br. at 42 n. 13. The truth: Monsanto reserved the right to "respond in any manner it chooses, including opposing or not responding to any [attorneys' fee] request." *Rawa v. Monsanto*, Case No. 4:17-cv-01252-AGF, Doc. 32-1 at 15 (W.D. Mo. 2017).

Third, Monsanto defends the settlement as not clearly reversionary. Monsanto Br. at 43. It is, however, in two respects: (1) the floor/ceiling structure and (2) the attorneys' fees.

*Floor/ceiling structure*. The portion of the settlement fund between the floor and the ceiling was "functionally" reversionary. 4 Newberg on Class Actions § 13:7 (5th ed.) (cleaned up); *see also Norton v. LVNV Funding, LLC*, 2021 WL 3129568, at *9 (N.D. Cal. July 23, 2021) ("A

claims-made settlement raises the same concerns as a reversionary agreement and so the third *Bluetooth* factor is present here."). And it did.

Yet Monsanto argues courts "have repeatedly found [the floor/ceiling structure] is appropriate." Monsanto Br. at 43. It relies on two cases: (1) *Apple Device*[6] and (2) *Walmart Wage*[7]. Neither of which supports this settlement.

To begin, both settlements produced a "substantial result." *In re Apple Inc. Device Performance Litig. (Apple Device II)*, 2023 WL 2090981, at *13 (N.D. Cal. Feb. 17, 2023). *Apple Device*'s settlement created a $310 million non-reversionary floor (with a $500 million ceiling). *Id.* And *Walmart Wage*'s settlement's non-reversionary $43 million floor nearly quadrupled the class's unpaid wage losses. 2011 WL 31266, at *5. This settlement, by contrast, "does not confer a particularly significant benefit on anybody." 1-SER-86. Instead, "it's like Monsanto taking a penny out of its pocket and paying to get rid of what is essentially a nuisance loss." 1-SER-87 (cleaned up).

---

[6] *In re Apple Inc. Device Performance Litig. (Apple Device)*, 2021 WL 1022867 (N.D. Cal. Mar. 17, 2021).

[7] *In re Wal-Mart, Inc. Wage & Hour Litig. (Walmart Wage)*, 2011 WL 31266 (N.D. Cal. Jan. 5, 2011)).

At the same time, collusion was not a concern in either case. In *Apple Device*, plaintiffs' lawyers did not request a disproportionate share of the settlement. They sought only 28.3% of the non-reversionary floor. *Apple Device II*, 2023 WL 2090981, at *13. And because the settlement lacked a clear sailing agreement, Apple objected to the fees. *Id*. In the end, the court awarded 26% of the non-reversionary floor in fees. *Id*. *Walmart Wage* was issued before *Bluetooth* and thus the court had no factors to evaluate.[8]

*Gilmore counsel's fee*. Monsanto concedes the district court's fee reduction "ultimately reduced Monsanto's total payment." Monsanto Br. at 43. And at least a partial reversion was almost guaranteed to happen if the court cut fees.[9] *Id*. (explaining "cut in fees would *not affect* the total

---

[8] In *Walmart Wage*, moreover, "the parties engaged in motion practice, including a motion to dismiss, two summary judgment motions, and a motion for class certification; Plaintiffs retained an expert familiar with Wal-Mart's computerized data systems; Defendant appealed the Court's class certification order; Plaintiffs reviewed voluminous document production from Wal-Mart and conducted twenty-seven depositions across the country; and six discovery orders were issued by the discovery magistrate judge." 2011 WL 31266, at *6.

[9] Settlors could have designed the floor/ceiling settlement without a reversion on the fees. For instance, the settlement could have mandated that any cut in fees—even above the floor—would be added to the class recovery.

payment" only if claims were "well below or well above the floor" (emphasis in original)). Although the portion that reverted to Monsanto provided no "additional benefit to the class," Gilmore Br. at 45, the court did not "explain" the reversion at all. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prod. Liab. Litig.*, 895 F.3d 597, 612 (9th Cir. 2018).

Even so, Monsanto contends "that a reversion can 'have perfectly benign purposes and impacts, and so [is] not per se forbidden.'" Monsanto Br. at 44 (citing *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prod. Liab. Litig.*, 895 F.3d 597, 612 (9th Cir. 2018). Maybe so. But this case highlights the reason reversions are disfavored.[10] *Volkswagen* emphasized two ways "[a] reversion can benefit both a defendant and class counsel, and thus raise the specter of their collusion." First, by "reducing the actual amount defendants are on the hook for, especially if the individual claims are relatively low-value, or the cost of claiming benefits relatively high." *Id*. Second, by "giving counsel an inflated

---

[10] "Some commentators and courts disfavor reversions because they arguably undermine the deterrent effect of class actions." *In re Volkswagen*, 895 F.3d at 611 n.20. And here, the district court acknowledged that "from the standpoint of deterrence for Monsanto or sort of remedying the wrongdoing . . . there's no real value to the settlement from that standpoint." 2-SER-87 (cleaned up).

common-fund value against which to base a fee motion." *Id*. Both are true here. Monsanto "recoup[ed] a large fraction of the funding." *Id*. Gilmore counsel also used the ceiling as an inflated value against which to base the fee motion as the district court held. Accordingly, the district court's own determinations should have prompted the court to take a much closer look at the reversion.

### C. Missouri class members are in a stronger position than any other class member.

The Missouri court certified a class of Missouri Roundup purchasers. That certification decision "substantially increase[d] the value" of their claims.[11] *Schleicher v. Wendt,* 618 F.3d 679, 682–83 (7th

---

[11] Gilmore argues "whether or not their class is certified has no bearing on whether Missouri class members stand to recover more under Missouri law." Gilmore Br. at 46. That is not true in practice. *See*, *e.g.*, *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc. (In re Visa Check/MasterMoney Antitrust Litig.),* 280 F.3d 124, 145 (2d Cir. 2001) ("The effect of certification on parties' leverage in settlement negotiations is a fact of life."), *overruled on other grounds by In re Initial Public Offerings Securities Litig.*, 471 F.3d 24 (2d Cir. 2006). The "basic truth about class action litigation" is this: "the fight over class certification is often the whole ballgame." *Hartford Acc. & Indem. Co. v. Beaver*, 466 F.3d 1289, 1294 (11th Cir. 2006).; *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.,* 487 F.3d 261, 267 (5th Cir. 2007) ("[A] district court's certification order often bestows upon plaintiffs extraordinary leverage[.]"), *abrogated in other respects by Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804 (2011).

Cir. 2010); *see also* 1-SER-70 (motion for final approval) (recognizing uncertainty of nationwide class certification as a reason to approve the insubstantial settlement amount). Yet the district court never addressed the effect of class certification itself. So settlors scramble to give two reasons why this Court should now ignore class certification.[12] First, they argue certification under Missouri law is less important. Second, they suggest the order between certification and the tentative settlement should matter.[13] Neither has merit.

---

[12] Settlors ignore that the Supreme Court has directed "courts to ensure that a nationwide class will 'not improperly interfere with litigation of similar issues in other judicial districts,'" as it has here. *See* Opening Br. at 33 (quoting *Califano v. Yamaski*, 422 U.S. 682, 702 (1979)).

[13] Monsanto complains Tomlinson plaintiffs' discussion of claims rate is a backdoor attack on the notice process. Monsanto Br. at 56. This is wrong. Instead, under these circumstances, the claims-made settlement guaranteed "some very small percentage of the class members will get a very small benefit." 2-SER-87. By contrast, a classwide judgment would create a common fund based upon Monsanto's *total* liability.

Monsanto also makes much of the fact no Missouri resident opted out of the settlement. Monsanto Br. at 56. But even if notice is sufficient without informing Missouri residents that they are in a certified statewide class, this lack of notice explains their behavior. They likely believed this settlement was their only opportunity at relief (unaware they were members of a more valuable class).

For starters, class certification under Missouri law provides the same benefits as federal law including enhanced leverage. At any rate, Monsanto offers two alleged differences between the certification rules. It first argues that certification is "subject to later decertification." Monsanto Br. at 59. So too under Rule 23. The Federal Rules allow a district court to modify or amend an order granting class certification up to the time of final judgment. *See Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1181 (9th Cir. 2017) (collecting cases on a district court's ability to modify), *rev'd on other grounds,* 139 S. Ct. 710, 203 L. Ed. 2d 43 (2019). And this certification decision already survived appeals through the Supreme Court of Missouri. 2-ER-90.

Monsanto also complains Missouri's certification standard is "highly lenient." Monsanto Br. at 59. But this undermines settlors' argument about the timing of class certification compared to the tentative settlement. Monsanto Br. at 43-44; *id.* at 53. Monsanto knew the Missouri class likely would be certified. It is no surprise then that it rushed to reach a tentative settlement in a single day.

In any event, the district court must evaluate the settlement at the time of preliminary approval. *See* Fed. R. Civ. P. 23(e)(2). All parties

agree, the Missouri class was certified well before the district court held its preliminary approval hearing. And Monsanto cannot reasonably complain that Missouri class members' claims must be assessed as members of a certified class. It chose to hide the tentative settlement agreement from Missouri courts when it could have sought a stay. To that end, Monsanto did not inform *any* court about the settlement until after the Missouri trial court certified a class, the Missouri Court of Appeals denied review, and the Supreme Court of Missouri did the same.[14] 2-ER-90.

Now, Monsanto says, "disclosing the tentative agreement to Objectors before it was final would have invited *more* arguments that the Settlement derived from a reverse auction, as it would have led to discussions between Monsanto and competing groups of plaintiffs before a settlement was signed." Monsanto Br. at 54. But this argument directly contradicts its position from previous Roundup settlements.

---

[14] Settlors assert that settlement negotiations were public knowledge. They point to Judge Welsh's designation on the *Ezcurra* docket. Gilmore Br. at 43. But that case was dismissed before any mediation occurred. And settlors never re-designated her on this case's docket. *See generally* 3-ER-317-54 (docket).

In *Rawa*, for example, Monsanto moved to postpone a hearing based on "a tentative nationwide class settlement."[15] Soon after, it asked for a stay to "promote judicial economy by avoiding the need to resolve pending motions[.]"[16] It even explained that plaintiff would "not lose any of her rights if the stay is granted" because she could "object" to the settlement "if she believes that is unfair or inappropriate." *Id*. Nor were Monsanto's actions unusual. Parties often seek a stay based on a tentative settlement.[17] *See, e.g.*, *Jaffe v. Morgan Stanley DW, Inc.*, 2007 WL 163196 (N.D. Cal. Jan 19, 2007) (granting two-month stay to allow "advanced" settlement negotiations to play out in a parallel case); *Annunziato v. eMachines Inc.*, 2006 WL 5014567, at * 5 (C.D. Cal. July 24, 2006) (granting motion to stay class action where parallel state court case had settled because stay would save defendants from hundreds of hours

---

[15] *Ward v. Monsanto Co.*, Case No.: 1:17-cv-03335, Doc. 18 (Defendant Monsanto Co.'s Consent Motion to Postpone the August 15, 2017 Hearing and Presentment Pending Filing of Motion to Stay) (N.D. Ill.).

[16] *See Ward v. Monsanto Co.*, Case No.: 1:17-cv-03335, Doc. 21 (N.D. Ill.).

[17] A stay to consider these and other issues is exactly what should have happened. Among other issues, a stay would have allowed time for the Missouri certified class — represented by their own court-appointed counsel — to negotiate from a position of strength, not one of weakness as occurred here.

spend on discovery and briefing); *Advanced Internal Techs., Inc. v. Google, Inc.*, 2006 WL 889477, at * 1-2 (N.D. Cal. Apr. 5, 2006) (granting stay in part because judicial resources would not be wasted by having to consider pending motion for class certification).

Like the district court, settlors focus on the supposed lack of substantive differences between the Missouri Merchandising Practices Act (MMPA) and other consumer fraud statutes. *See* Monsanto Br. at 57-62; Gilmore Br. at 43-49. At most, they can point to laws with similarly consumer friendly features. *See Tersakovec v. Ford Motor Co.,* --- F.4th --- (11th Cir. 2023) (holding that the MMPA lacks a reliance requirement); *see also Plubell v. Merck & Co., 289* S.W.3d 707, 714 (Mo. App. W.D. 2009) (holding that consumers need not show the unlawful practice caused the purchase). And those arguments avoid the crux of the issue. Missouri class members are in a certified class proceeding under favorable law in a favorable jurisdiction. No other class members were in this enviable position.

Gilmore's attempts to distinguish Tomlinson plaintiffs' cases only underscore the similarities. Take *Sharp Farms* for instance. Gilmore notes, "*Fisher-Lewis* objectors had, in their action, 'largely survived a

motion to dismiss, achieved class certification, and successfully defend[ed] against [defendant's] challenge to certification before the North Carolina Supreme Court.'" Gilmore Br. at 48. Just the same here. True, Tomlinson plaintiffs "have not obtained a merits ruling in their own action[.]" *Id*. But Monsanto never even moved to dismiss—something they do in every case. 2-ER-41 (stating that "Monsanto moves to dismiss everything[.]"). Like *Sharp Farms*, Tomlinson plaintiffs then achieved class certification and successfully defended it through the state's high court.

### D. Gilmore and his counsel are inadequate representatives for the certified Missouri class.

Gilmore and his counsel are also inadequate representatives for at least the Missouri class. Their inadequacy is revealed by answering two questions:

Question One: "[D]o the named plaintiffs and their counsel have any conflict of interest with other class members?" *Kim v. Allison*, 2023 WL 8405866, at *3.

Answer: Yes.

Question Two: "[W]ill the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id*.

Answer: No.

Both answers are explained below. Because Gilmore and his counsel are inadequate representatives, settlors could not reach a fair settlement without Missouri class representation at the bargaining table.

### 1. Gilmore and his counsel have fundamental conflicts of interest with the certified Missouri class.

"Although conflicts within a class come in many guises," *Kim*, 2023 (quotations omitted), "[o]nly conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Id*. Gilmore has such a fundamental conflict with Missouri class members. He lacks standing and thus has no real opportunity to pursue his claims. Meanwhile, Missouri class members are in a certified class that Monsanto did not even attempt to get dismissed.

Without standing, Gilmore had "no chance of going to trial." *Id*. at *5 (quotations omitted). He therefore had "a strong interest in settling h[is] claim, even at the cost of a broad release of other claims not subject to [the motion to dismiss]." *Id*. After all, Gilmore and the other class representatives' only opportunity for the $5,000 incentive award was through a settlement. *Id*.

17

Even so, settlors ask the Court to ignore this problem. They say there is a simple answer: Gilmore could "simply replead[] under Oregon law." Monsanto Br. at 47. This speculative solution only creates new problems. Under Oregon's consumer fraud statute, plaintiffs must prove reliance for misrepresentation claims. *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 125-26 (2015).

Unlike Gilmore, Tomlinson plaintiffs suffer none of the same defects. They have standing, they have survived the motion-to-dismiss stage (Monsanto did not even move to dismiss knowing it would have been futile to do so), and they have been appointed class representatives. Still, settlors repeatedly argue they "lacked leverage for a nationwide settlement." Monsanto Br. at 49; *see also* Gilmore Br. at 41 ("Objectors ignore that they had *no* negotiating leverage for the vast majority of Class Members (those living outside Missouri)."). Adequacy is not determined, however, "by deferring to a percentage-of-the-class formula." *Kim*, 2023 WL 8405866, at *5. And Gilmore and his counsel's "willingness to put even a minority of class members' claims at risk for a fee is precisely the kind of conflict Rule 23(a)(4) was designed to avoid." *Id.*; *see also Odon*

*USA Meats, Inc. v. Ford Motor Credit Corp.*, 1994 WL 529339, at *8 (N.D. Ill. Sept. 27, 1994).

### 2. Gilmore and his counsel failed to vigorously prosecute this case.

Gilmore and his counsel have not "prosecuted the action vigorously on behalf of the class." *Kim*, 2023 WL 8405866, at *5 (cleaned up). Their failure is shown in at least three actions: (1) conducting inadequate discovery; (2) voluntarily abandoning punitive damages; and (3) settling quickly.[18]

First, Gilmore conducted inadequate discovery for this case.[19] *See id.* (holding that a plaintiff may have conducted inadequate discovery even when they conduct some discovery). Settlors point to "formal discovery from two related cases." Monsanto Br. at 51. But those cases either targeted retailers or centered on a single state (Florida). Gilmore only received informal nationwide discovery. Monsanto minimizes

---

[18] These are the same actions identified in the opening brief as additional signs of collusion. Opening Br. at 25-29.

[19] Monsanto's cases involving limited discovery did not present the *Bluetooth* red flags. *See Patel v. Axesstel, Inc.*, 2015 WL 6458073, at *7 (S.D. Cal. Oct. 23, 2015) ("none of these indicia of collusion are present in the Stipulation here."); *Taafua v. Quantum Global Technologies, LLC*, 2021 WL 579862, at *7 (N.D. Cal. Feb. 16, 2021) (similar).

Tomlinson plaintiffs' discovery as like the personal injury cases. It never explains why, however, it aggressively fought against providing that discovery or any other discovery to the Tomlinson plaintiffs. 2-ER-91-92 (explaining contentious discovery process).

Second, Gilmore voluntarily abandoned punitive damages despite previously pleading them. His counsel alleges they "considered the likelihood" of punitive damages when negotiating the settlement. Monsanto Br. at 48-49. The emphasis on the merits of punitive damages misses the point. "[T]here is no strategic benefit to waiving" punitive damages. *See Kim*, 2023 WL 8405866, at *6. Gilmore's "failure to make obvious arguments" shows he did not vigorously litigate on behalf of the class. *Id.*

Third, Gilmore "basically went straight to settlement" after filing his complaint in Delaware. *Fee Approval*, 2023 WL 2723340, at *3. Settlors contend this "ignores *years* of litigation in the related actions that preceded the Settlement." Monsanto Br. at 50. And that Gilmore counsel had a "well-documented litigation strategy" intended to pressure Monsanto into settlement. Gilmore Br. at 41. If there was a strategy, it was not a successful one. None of the cases against retailers survived a

motion to dismiss. Gilmore counsel's only other case against Monsanto failed. To the extent those cases could exert any pressure, it was to end the nuisance. Those nuisance suits therefore produced a nuisance settlement. 2-SER-87.

### 3. Gilmore and his counsel's inadequacy created an inadequate settlement.

Gilmore and his counsel's inadequacy produced an inadequate settlement. This is best shown by comparing this settlement to other Roundup product settlements. For this appeal, settlors argue the other Roundup settlements have "limited value" because they "involved different claims, different facts, and different evidence." Monsanto Br. at 61; *see also* Gilmore Br. at 49 (settlements involved "different facts and claims."). Yet before, Gilmore counsel happily asserted that "[i]t is also instructive to look to comparable settlements with Monsanto related to Roundup products, such as *Rawa* and *Jones* settlements." 2-SER-156.

*Jones* is particularly informative. Like this case, *Jones* involved the same active ingredient (glyphosate), the same product (Roundup), the same claim (consumer fraud), and the same theory (Monsanto misrepresented the safety of glyphosate). *See Jones v. Monsanto Co.*, 38 F.4th 693, 696 (8th Cir. 2022). Common sense dictates most consumers

would care more about the active ingredient causing cancer than killing gut bacteria. And so, common sense dictates this settlement should be more valuable than *Jones*. But this settlement is only about half the value of *Jones*. *Id.* ($39.55 million common fund).

## Conclusion

For these reasons, this Court should reverse the judgment below and remand for further proceedings.

**Dated: December 27, 2023**          /s/ Kasey A. Youngentob

**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-15611

I am the attorney or self-represented party.

**This brief contains** 4,513 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____ .

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Kasey Youngentob **Date** 12/28/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*